## Sternbergh et al., Appellants, *v.* Chickies Iron Co.

*Rescission of contract—Evidence—Delay.*

If the purchasers of bar iron do not make any objection to its quality for fifty-six days after the last car load is shipped to them, they cannot rescind their contract.

A purchaser of goods cannot rescind the contract by writing to the seller as follows: "We think it would be well for you to come here and see them and say what you wish to have done with them. We are obliged to reject them as utterly unfit for our use and wish you to take them away."

*Sale—Warranty—Evidence.*

A dealer in iron offered certain iron to a maker of rivets, who answered as follows: "We must have the very best quality for this purpose, and we should want it right along all the time of the same quality, if we found it satisfactory." To this the following reply was sent: "As the best way of finding out whether the bars will answer your purpose is to try them, we suggest that you take a sample car load." The iron was sent, and proving satisfactory other orders were given. Subsequently the rivet maker suggested a different mixture for the iron, and this was agreed to and iron was made in accordance with his suggestions. *Held*, that there was no warranty of the quality of the iron.

Argued May 15, 1893. Appeal, No. 44, July T., 1892, by plaintiffs, James H. Sternbergh et al., from judgment of C. P. Lancaster Co., April T., 1888, No. 14, on verdict for defendant. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit to recover purchase price paid for iron of alleged inferior quality sold by defendant to plaintiff.

At the trial, before PATTERSON, J., the following correspondence was offered in evidence:

On Oct. 1, 1886, defendant wrote as follows:

"We beg to advise you that the Chickies Rolling Mill are now under contract to make muck bars for us, exclusively out of 'Chickies' pig, and the quality is superior to anything ever produced heretofore at the mill, the idea being to turn out a high grade bar only for especial purposes. We think they are just what you want, and when you are in the market would be pleased to quote you prices."

Plaintiff replied, Oct. 2, 1886:

"Yours of the 1st October is received. Do you think you

could furnish muck bars of such a quality that would be suitable for boiler rivets at a moderate price ? We use 3 in. wide and 4 in. wide and sometimes 6 in. wide bars, principally 3 in. and 4 in. We want also a good quality for bolts, and by the term good we mean first quality—a quality that will bend double cold in the bolt rod without showing a sign of fracture, well boiled, fibrous iron, free from red shortness, or any crystalline structure. But our requirements for rivet stock are exacting. We must have the very best quality for this purpose, and we should want it right along all the time of the same quality, if we found it satisfactory. The market is always low for boiler rivets, and we should have to buy at a low price in order to compete with other makers. What are called 'good' muck bars, as ordinarily understood, we find would not answer our purpose for rivets. Will you be kind enough to consider this inquiry and advise us what you could do ? And quote price f. o. b. here."

On Oct. 4, 1886, defendants wrote :

" Your favor of the 2d inst. is rec'd. We believe you have used a considerable number of bars made at Chickies rolling mill. We consider those now made as better than any heretofore produced at this mill. The sizes they make are 3 in. & 4 in. As the best way of finding out whether the bars will answer your purpose is to try them, we suggest that you take a sample car load, for which our price will be $30.50 per ton, f. o. b. cars here."

The iron was sent, and proving satisfactory various orders were given. Subsequently plaintiffs suggested a different mixture, and defendants complied with the suggestion.

On Nov. 17, 1886, defendants wrote : " We to-day ship you a car load, 20 tons, $3\frac{1}{2} \times \frac{5}{8}$ Muck Bars as per B. L. enclosed. These bars are made with a small percentage of cold short pig iron, and we don't know whether or no they are any better for your purpose than made of all Chickies pig, as it is difficult to get a good cold short iron to mix. We won't ship the other car load until we hear from you in regard to how this lot works. We are anxious to make an iron to suit you. The tendency of red short in our bars suits all our other customers exactly, but if we can alter our mixture to suit you will willingly do so."

On Dec. 21, 1886, plaintiff wrote : " We have tested the last

lot of iron received from you and find that it is better adapted for rivets than the former lot. Still we have not gone far enough to determine whether it will be in all respects satisfactory or not. At all events, we wish to place an order with you for 100 tons, and enclose our formal order, which you may ship as early as convenient at $31 f. o. b. cars there, same as the last lot. Even in case we could not use it for rivets, we could use it for bolts, which require the very best quality of iron."

On Jan. 8, 1887, plaintiff ordered 200 tons best quality, strictly neutral muck bars. These were delivered in January and February, the last shipment being made on Feb. 9th. On March 25, 1887, plaintiffs wrote to defendants complaining of the quality of the iron, and, on April 6, sent the following letter :

" Mr. Reinhold was here yesterday and examined the muck bars received from you, and we think was abundantly satisfied as to their inferior quality. We think it would be well for you to come here and see them and say what you wish to have done with them. We are obliged to reject them as utterly unfit for our use and wish you to take them away. Awaiting your directions."

Plaintiff paid for the whole of the 200 tons delivered to them. The suit was brought to recover the amount thus paid and the expenses connected with the iron.

The court entered a compulsory nonsuit and subsequently refused to take it off.

*Error assigned* was refusal to take off nonsuit.

*J. Hay Brown* and *Geo. Nauman, W. U. Hensel* with them, for appellants, cited : Fogel v. Brubaker, 122 Pa. 7 : Pence v. Langdon, 99 U. S. 578.

*E. D. North* and *H. M. North* for appellees, cited : Roebling v. Brown, 9 W. N. 170 ; Altoona Iron Works v. Axle Co., 6 W. N. 271 ; Coulston v. Bank, 4 W. N. 297 ; Kraber's Ex'rs v. Union Ins. Co., 24 W. N. 547 ; U. B. Mutual Aid Soc'y of Pa. v. White, 12 W. N. 147 ; Middleton v. Stone, 111 Pa. 589 ; Shafer v. Senseman, 125 Pa. 310 ; Fisher v. Moyer, 3 Cent. R. 583 ; s. c., 4 Atl. R. 64 ; Bryant v. Hagerty, 87 Pa.

256 : Sharp v. Ponce, 76 Me. 350 ; Norton v. Young, 3 Me. 30 ; Kase v. John, 10 Watts, 107 ; West v. Cutting, 19 Vt. 536 ; Freyman v. Knecht, 78 Pa. 141 ; Heastings v. McGee, 66 Pa. 386 ; Fogel v. Brubaker, 122 Pa. 14 ; Pearsoll v. Chapin, 44 Pa. 9 ; Negley v. Lindsay, 67 Pa. 217 ; Morgan v. McKee, 77 Pa. 228.

PER CURIAM, June 7, 1893 :

The only question presented by this record is whether the court erred in refusing to take off the judgment of nonsuit.

We have fully considered the plaintiffs' testimony, in connection with the propositions so ably contended for by their learned counsel, and are not convinced that the case should have been submitted to the jury. On the contrary, we find nothing in the testimony that would have warranted the jury in rendering a verdict in their favor for the amount of their claim or any part thereof. There is no sufficient evidence of any warranty, by defendant, of the quality of the iron it contracted to deliver, nor any sufficient evidence of rescission of the contract by plaintiffs. If they ever had a right to rescind, they failed to exercise it within a reasonable time.

Judgment affirmed.